UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-76-H

NAZAR ALAMER and
ABLE SACERIO-CARDENAS

PLAINTIFFS

V.

RALCORP FROZEN BAKERY
PRODUCTS, INC.                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Nazar Alamer ("Alamer") and Able Sacerio-Cardenas ("Sacerio"), bring suit

against Defendant Ralcorp Frozen Bakery Products, Inc., ("Ralcorp") asserting claims of 1)

discrimination on the basis of national origin, 2) retaliation for complaining of alleged acts of

discrimination, and 3) discrimination on the basis of disability, all in violation of The Kentucky

Civil Rights Act (the "KCRA"), KRS Chapter 344, *et seq*.  The parties have completed

discovery, and now the Court considers Ralcorp's motion for summary judgment.

I.

During the time of each Plaintiff's respective employment, both they and Ralcorp were

bound by a collective bargaining agreement ("CBA") negotiated between Ralcorp and The

International Brotherhood of Teamsters, Local Union No. 783, of Louisville, Ky. (the "Union").

Plaintiffs were members of the Union and familiar with the CBA's terms.  The CBA governs the

terms and conditions of their employment.  Their claims arise from actions generally governed

by the CBA.

Ralcorp hires employees to work within job families.  Each job family consists of three

distinct job tasks, and an employee is expected to eventually qualify for and perform all three job tasks. To move among job families, an employee must bid for an entirely new job family; rather than simply bidding for a job task within a family. The CBA bidding system prohibits assigning an employee to only one job task within a family. Ralcorp can, however, temporarily assign an employee to make accommodations for disabilities. Further, under the CBA, a Ralcorp employee loses seniority and job status if she has not worked for twelve months, or if she applied for unpaid medical leave for 18 months for a compensable illness or disability.

A.

Sacerio, whose country of origin is Cuba, began working for Defendant in September of 2006. Ralcorp placed him in the "RTB Sheeting" job family as a Line Operator. By January 16, 2007, Sacerio was a full-time employee. From time to time, Ralcorp conducted forklift training for its employees. On several occasions, Sacerio told his Team Leader, Derrick Gibbs ("Gibbs")[1] that he wanted to receive forklift training. In April of 2007, Sacerio complained to Gibbs that he was being excluded because he was "Spanish." Despite Sacerio's repeated requests, Ralcorp failed to include him in forklift training for the next month. In fact, he never received the training.

Also, in April of 2007, Sacerio also asked for a respiratory mask. He claims that Ralcorp denied him the mask for six months despite repeated requests. In fact, he claims that the day after his second such complaint, Gibbs placed him in the tote room which contained significant dust levels. In June of 2007, Sacerio complained to Gibbs that an American coworker

---

[1] From January of 2007 to September of 2008, Gibbs served as the direct supervisor, or Team Leader, for both Sacerio and Alamer. Gibbs served as the Team Leader for five different job families, and he was responsible for making the hiring and staffing decisions for each job family.

named Raymond Barnes ("Barnes") had verbally abused him. About one week later, Gibbs issued a disciplinary warning to Sacerio for failing to work overtime following a 16-hour shift. Sacerio claims that the two other employees who also were asked to work overtime following the 16-hour shift were both foreigners. He further claims that Ralcorp did not require an American employee who worked the same 16-hour shift, Ricky Vannerson, to work overtime.

At the end of August of 2007, Barnes verbally assaulted Sacerio for a second time. Sacerio told Operations Manager Mac Reed ("Reed") that he was being discriminated against because he was Spanish. He attended two meetings with Barnes, Reed, and his Union representative, at which time a Ralcorp representative advised both employees of the importance of working together and further advised Barnes of the need to control his temper. Ralcorp advised both Sacerio and Barnes that further incidents would result in their termination. In September of 2007, Sacerio complained to Gibbs once again about discrimination based on his nationality. Later that month, Gibbs entered a break room where Sacerio, another Cuban employee, and approximately twenty non-Cuban workers were seated. Gibbs singled out Sacerio and the Cuban employee, questioning why they were on a break.

On September 19, 2007, Sacerio suffered a work-related back injury, which forced him to miss a few days of work. Despite receiving doctors' notes explaining the absence, Ralcorp terminated Sacerio on October 1, 2007, due to attendance violations. The following day, Sacerio contacted the Equal Employment Opportunity Commission (the "EEOC") with the intention of filing a complaint alleging national origin discrimination and retaliation. On October 4, 2007, Ralcorp, claiming an administrative error, reinstated Sacerio with full back pay. Despite his reinstatement, Sacerio filed the EEOC complaint.

Following reinstatement, Sacerio's injuries limited him to alternating between standing and sitting, and lifting no more than 10 pounds, with no repeated bending or twisting of his back. Ralcorp accommodated Sacerio by assigning him to particular job tasks consistent with his restrictions. Between December of 2007 and March of 2008, Sacerio's doctor ordered him not to work. He attempted to return to work in March of 2008; but, by that time his physician classified his restrictions as permanent. Ralcorp refused to permanently restrict Sacerio's job duties to one job task. From September of 2008 to November of 2008, Sacerio applied for nine different job family placements. He received none. In fact, he did not work for Ralcorp in any capacity after December of 2007. On June 5, 2009, Sacerio's seniority expired and Ralcorp terminated his employment under the terms of the CBA.

B.

Alamer, whose country of origin is Iraq, began working for Ralcorp in December of 2005. In March of 2006, he attained seniority and union status. As it did with Sacerio, Ralcorp assigned Alamer to the "RTB Sheeting" job family as a Line Operator.

On May 31, 2007, Gibbs disciplined Alamer and a fellow Iraqi employee for failing to properly perform a work task known as a changeover. Alamer claims that he had not been trained to perform the task, and also that several of his American co-workers[2] were not disciplined for making similar mistakes. The same day, Alamer complained to Gibbs that the discipline amounted to national origin discrimination. A couple of weeks later, Gibbs threatened Alamer that he would be written up or terminated if he did not work overtime following a 16-hour shift. Alamer claims that Gibbs did not subject his American co-workers to such

---

[2] Alamer specifically names Ricky Washburn, Raymond Barnes, Faye Coleman, Damon Weathers, Kim Ball Eisner, and Arthur Koch.

requirements, specifically Ricky Vannerson.

On July 11, 2007, Alamer suffered a severe injury to his cervical spine in a work-related accident. After missing some time at work, he returned with restrictions – no lifting greater than 10-15 pounds, and no overhead work or twisting. From July to November of 2007, Alamer worked in various positions under these restrictions. Alamer claims that Ralcorp attempted to force him to quit by initially placing him in positions that did not meet his restrictions.

On August 15, 2007, Alamer reminded Gibbs about his medications and restrictions. The next day, Gibbs placed Alamer in a job that caused his neck to swell. Alamer claims that an American co-worker, Damon Weathers ("Weathers"), had been asked to perform the same task and that when he refused, Gibbs made Alamer perform the task. He complained to Gibbs that the failure to move Weathers was discrimination.

On September 6, 2007, Alamer notified Ralcorp that his doctor required him to wear a medical patch for 12 hours. Gibbs placed him in the Oven Area, which caused his medical patch to fall off. Alamer made Gibbs aware of the problem, but Gibbs did not immediately move him to another job task. The patch was ineffective and Alamer's condition worsened. On September 10, 2007, he filed an EEOC charge.

In October 2007, Alamer claims that Raymond Barnes, the same employee who had two confrontations with Sacerio, made inappropriate comments about his national origin, including that Alamer should go back to his country. Alamer claims that despite the fact that Barnes made some of the comments in front of Team Leaders, and that he complained to Human Resources, Ralcorp did nothing to correct the situation. In fact, the Manager of Employee and Community Relations for Ralcorp's Louisville facility, Edward Judice ("Judice"), made Alamer and Barnes

sign the harassment policy and warned them that additional incidents may result in their termination.

Beginning on November 2, 2007, Alamer was off of work due to obtaining an MRI of his head. On December 9, 2007, he filed an OSHA charge, claiming that Gibbs harassed him and subjected him to unsafe work conditions by placing him in job tasks that did not meet his restrictions. When Alamer attempted to return to work on December 17, 2007, Ralcorp informed him that there were no jobs for him. On February 19, 2008, Alamer's doctors placed him under permanent restrictions, which included no bending, stooping, crawling, or climbing. They further stated that Alamer had reached "maximum medical improvement." On June 7, 2009, Alamer's seniority expired, and Ralcorp terminated his employment under the terms of the CBA.

II.

Plaintiffs assert KCRA claims both national origin discrimination and retaliation, as well as disability discrimination. The language of the statute mirrors that of federal anti-discrimination law, and courts have interpreted it consistently therewith. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). Therefore, the Court will analyze Plaintiffs' KCRA claims under the framework provided by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101*, et seq.*

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) . A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial

burden of showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  Once the initial showing by the moving party has been made, "the

non-moving party must come forward with 'specific facts showing that there is a genuine issue

for trial.'"  *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848

(6th Cir. 2002) (quoting *Fed.R.Civ.P. 56(e)*).  The court must "view the evidence and draw all

reasonable inferences therefrom in the light most favorable to the non-moving party."  *Little v.*

*BP Exploration & Oil Co.*, 265 F.3d, 357, 361 (6th Cir. 2001).

III.

The Court will first consider Plaintiffs' national origin discrimination claims.

To state a prima facie case of national origin discrimination, a plaintiff must show that he

or she: 1) is a member of a protected class; 2) suffered an adverse employment action; 3) was

qualified for his or her position; and 4) was replaced by someone outside his or her protected

class, or was treated differently than similarly-situated, non-protected employees.  *DiCarlo v.*

*Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

The primary obstacle to either Plaintiff's *prima facie* case is whether they can establish

an adverse employment action.  An adverse employment action is "typically marked by a

significant change in employment status, including hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits."  *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).

Though Plaintiffs make many allegations of unfair treatment, they fall short of the *Spees*

"adverse employment action" definition.  Neither Plaintiff claims that national origin

discrimination played a role in their ultimate termination; neither lost job benefits nor received a

7

loss of pay or demotion.  Alamer's complaints were of the kind sometimes associated with

hostile work environment claims, except that his complaints are not so severe and he makes no

such claim.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see also Hafford v.*

*Seinder*, 183 F.3d 506, 512 (6th Cir. 1999).  Similarly, Sacerio cannot demonstrate that he

suffered an adverse employment action either.  His only evidence of adversity is his own beliefs

and assertions of mistreatment, which are insufficient to establish a genuine issue of material

fact. *Lomax v. Sears, Roebuck & Co.*, No. 99-6589, 2000 U.S. App. LEXIS 33884, *12-15 (6th

Cir. Dec. 19 2000) (unpublished).  "A 'bruised ego' or a 'mere inconvenience or an alteration of

job responsibilities' is not sufficient to constitute an 'adverse employment action' under Title

VII." *Spees v. James Marine, Inc.,* 617 F.3d at 391.  Consequently, the Court concludes that

neither Plaintiff can establish a prima facie case of national origin discrimination.

IV.

Next, the Court will assess Plaintiffs' retaliation claims.

To state a prima facie case for retaliation, a plaintiff must show that: 1) he or she engaged

in a protected activity; 2) the defendant knew that the plaintiff engaged in such protected

activity; 3) the defendant subsequently took a materially adverse, retaliatory action against the

plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a

supervisor; and 4) the protected activity and the adverse action were causally connected.  *See*

*Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 736 (6th Cir. 2006) (citations omitted).

Ralcorp argues that Plaintiffs have failed to establish the first and third elements of the prima

facie case.

A.

Protected activities are divided into two categories: 1) "opposing" any practice made unlawful under anti-discrimination law; and 2) "participating" in an investigation under anti-discrimination law. *See* KRS § 344.280(1); *Johnson v. University of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989). An opposed practice need not be unlawful in fact, but the plaintiff must have a reasonable and good faith belief that the opposed practice is unlawful. *See Johnson*, 215 F.3d at 579. Moreover, the Supreme Court and this Court have interpreted acts of opposition broadly. *See Crawford v. Metro. Gov't of Nashville & Davidson County*, 129 S. Ct. 846, 850 (2009); *Frederick v. Oldham County Fiscal Court*, No. 3:08-CV-401-H, 2010 U.S. Dist. LEXIS 91605, *39-42 (W.D. Ky. Sept. 2, 2010). The law protects acts of participation even if the employee is wrong on the merits and if the contents of the charge are malicious. *Booker*, 879 F.2d at 1312. Filing a charge with the EEOC constitutes an act of participation. *Johnson*, 215 F.3d at 582.

Sacerio's allegedly protected actions consist of the following: 1) complaining to Gibbs that he was being discriminated against because of his national origin in April of 2007, after his requests for forklift training had been denied; 2) complaining to Gibbs about not receiving a respiratory mask in April of 2007; 3) complaining to Gibbs that coworker Raymond Barnes verbally abused him in June of 2007; 4) complaining to Reed, following a second verbal confrontation with Barnes, that he was discriminated against because of his national origin in August of 2007; 5) complaining to Gibbs once again that he was discriminated against due to his national origin in September of 2007; and 6) making an EEOC charge on October 11, 2007.

Alamer's allegedly protected actions are as follows: 1) complaining to Gibbs on May 31,

9

2007, that he had been disciplined for failing to properly perform a changeover due to his

national origin; 2) filing an EEOC charge on September 10, 2007; 3) complaining to Edward

Judice about Barnes's allegedly discriminatory comments in October of 2007; and 4) filing an

OSHA charge on December 9, 2007.

The Court need only determine whether Plaintiffs have created a genuine issue of

material fact that these actions are protected activities. The most tenuous of the group is

Alamer's OSHA charge, and while it is clear that filing an OSHA charge is not a legally

protected act of participation, the Supreme Court's decision in *Crawford* and the contents of the

charge itself leave room for a reasonable jury to decide that Alamer's OSHA charge is a

protected act of opposition.  From among these choices, a reasonable jury would likely believe

that each Plaintiff has engaged in protected activities.

B.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme

Court modified the adverse employment action standard for retaliation claims, slightly lowering

a plaintiffs' burden from that in a traditional discrimination claim.  A plaintiff need only "show

that a reasonable employee would have found the challenged action materially adverse, 'which

in this context means it well might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211,

1219 (D.C. Cir. 2006) (quotation omitted)).

Sacerio alleges the following retaliatory adverse employment actions: 1) excluding him

from forklift training[3]; 2) placing him in the tote room after he had complained about problems

___

[3] This claim only refers to the training sessions beginning in May of 2007, after Sacerio complained of national origin discrimination.

with dust and requested a respiratory mask; 3) requiring overtime work following a 16-hour shift; 4) ordering him and another Cuban employee to return to work in front other co-workers; 5) terminating him on October 1, 2007; and 6) failing to accommodate his permanent restrictions by not allowing him to work.

Alamer alleges the following retaliatory adverse employment actions: 1) requiring overtime work following a 16-hour shift; 2) repeatedly requiring job tasks that did not meet his restrictions; 3) disciplining him after he complained that Barnes made discriminatory comments during a confrontation; and 4) failing to accommodate his temporary restrictions between December 17, 2007, and February 19, 2008 by not allowing him to work.

Some of these events, even if true, do not seem objectively severe enough to dissuade a reasonable employee from making or supporting a charge of discrimination in the future. However, taken together, the events do present genuine issues of material fact as to whether the alleged incidents are averse employment actions under the KCRA. A reasonable jury could find that the remaining incidents might have dissuaded a reasonable worker from opposing a discriminatory practice or participating in an investigation of discrimination. This is all that is required.

C.

Once a plaintiff makes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for taking the adverse employment action.

Ralcorp provides legitimate, nondiscriminatory reasons for all of the adverse employment actions against Sacerio, except perhaps one. First, it claims that it did not initially offer Sacerio forklift training because it was offered exclusively for those in the recently-added "Cinnamelt"

11

area. In addition, it did schedule Sacerio's forklift training on a day that he could not attend due to his injury. Second, Ralcorp says that it required all of Sacerio's co-workers to work overtime on the same day as Sacerio. Third, Ralcorp says that it terminated Sacerio due to an administrative error designating an absence of Sacerio as unexcused. Finally, it did not accommodate Sacerio's permanent restrictions because doing so would violate the CBA. Ralcorp did not provide a reason as to why it placed Sacerio in the tote room without a respiratory mask.

Ralcorp provides legitimate, nondiscriminatory reasons for two of the four adverse employment alleged by Alamer. Again, it required all of Alamer's co-workers to work overtime on the same day as Alamer. Second, Ralcorp claims to have disciplined Alamer after his dispute with Barnes because Barnes alleged a physical assault during the confrontation. Ralcorp did not provide a reason why it failed to accommodate Alamer's temporary restrictions from December of 2007 to February of 2008 and kept him from working. Defendant did not provide a reason why it repeatedly placed Alamer in job tasks that did not meet his restrictions.[4]

## D.

If the defendant meets its burden, the plaintiff must show that the proffered reason was a pretextual. A plaintiff can establish pretext by showing: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the adverse employment action, or (3) that it was insufficient to motivate the adverse employment action. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). The Court will analyze

---

[4] Ralcorp merely said that it has no obligation to place Alamer in his preferred job tasks. Regardless of whether or not this is true, it is not a legitimate, nondiscriminatory reason for placing Alamer in jobs that exacerbated his condition.

each Plaintiff's evidence of pretext.

1.

Sacerio offers some pretext arguments for all of Ralcorp's proffered nondiscriminatory reasons.

First, as to Ralcorp's forklift training reasons, Sacerio argues that his not being a part of the "Cinnamelt" group has no basis in fact. He points to Gibbs' testimony that two American workers who were not Cinnamelt employees received forklift training in April of 2007, and an April email from Gibbs requesting that a non-Cinnamelt employee be added to the forklift training list. In addition, Sacerio says that if Ralcorp truly intended to train him on September 20, 2007, the normal protocol is to provide an employee with notice that he will be trained, and that Ralcorp never provided him with any such notice.

Second, Sacerio argues that Ralcorp's proffered reason for requiring him to work overtime has no basis in fact. Sacerio claims that Ralcorp only required foreigners to work overtime that day. Specifically, he claims that Ralcorp did not require Ricky Vannerson, an American coworker, to work overtime that day. Third, Sacerio argues that the unexcused absence resulting from the record-keeping error was insufficient to motivate his discharge. In support, he points to the fact that Ralcorp never terminated Raymond Barnes, an American employee, even though Barnes had at least three verbal confrontations with foreign employees. Finally, Sacerio argues that fear of violating the CBA was not Ralcorp's motivation for refusing to accommodate his permanent restrictions. He names specific employees for whom, according to him, Ralcorp provided accommodations. Ralcorp says that each named employee only received temporary accommodations, just like Sacerio.

13

The Court concludes that genuine issues of material fact exist as to whether Ralcorp's proffered reasons for excluding Sacerio from forklift training, requiring Sacerio to work overtime, and terminating Sacerio on October 1, 2007 are pretextual. These claims of retaliation, as well as Ralcorp placing Sacerio in the tote room without a respiratory mask, survive summary judgment. On the other hand, Sacerio has failed to establish a genuine issue of material fact as to whether Ralcorp's proffered reason for failing to accommodate Sacerio's permanent restrictions – that doing so would violated the CBA – is pretextual.

2.

Alamer also offers pretext arguments for Ralcorp's proffered nondiscriminatory reasons. He says that Ralcorp's proffered reason for requiring him to work overtime has no basis in fact. He claims that Ralcorp only required himself, Sacerio, and another foreigner to work overtime on the day that he was required to do so, and that Ricky Vannerson, an American coworker, was not asked to work overtime that day.

Second, Alamer argues that Barnes's allegation that Alamer physically assaulted him during a confrontation did not actually motivate Ralcorp' decision to discipline him. Barnes was a repeat offender, having had two prior confrontations with Sacerio, both of which Ralcorp was well aware. As a result of Barnes's prior confrontations, he had been warned about his temper and given a disciplinary letter, yet when the incident with Alamer took place, Ralcorp disciplined Alamer and Barnes in the same manner. It is Alamer's contention that the actual motivation to discipline him was a preference for American employees.

The Court concludes that genuine issues of fact remain whether Ralcorp's proffered reasons for requiring Alamer to work overtime and disciplining Alamer following his

14

confrontation with Barnes are pretextual.  These claims of retaliation, as well as Ralcorp placing

Alamer in job tasks that did not meet his restrictions and failing to accommodate him at all from

December of 2007 to February of 2008, survive summary judgment.

V.

Finally, the Court will consider Plaintiffs' disability discrimination claims.

To establish a prima facie case of disability discrimination, a plaintiff must show that: 1)

he had a disability as that term is used under the relevant statute (here, the KCRA); 2) he was

"otherwise qualified" to perform the requirements of the job, with or without reasonable

accommodation; and 3) he suffered an adverse employment decision because of the disability.

*Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001).  Under KRS 344.010(4), a

"disability" is:

> (a)  A physical or mental impairment that substantially limits
>       one (1) or more of the major life activities of the individual;
> (b)  A record of such an impairment; or
> (c)  Being regarded as having such an impairment.

*See also* 42 U.S.C. § 12102(2).  Ralcorp disputes whether Sacerio is disabled, claiming that he is

not impaired in a major life activity.  Furthermore, Ralcorp claims there is no reasonable

accommodation that could have been provided to either Plaintiff in order to make them

"otherwise qualified."  The Court will address Sacerio and Alamer's claims separately.

A.

Sacerio claims that Ralcorp could have accommodated him by permanently placing him in one task within a job family, specifically the biscuit inspector position. However, permanently placing Sacerio in one job task would violate Article XX of the CBA. The CBA stipulates that employees "bid on Job Family vacancies," not individual job tasks within job families. The Sixth Circuit has held that "employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (citation omitted). In fact, a majority of circuit courts presume that, absent special circumstances, an accommodation which violates a collective bargaining agreement is unreasonable.[5]

Although the CBA does not explicitly state that in order to work in a particular job family an employee must be capable of performing all job tasks within that job family, Ralcorp argues that it has always interpreted the CBA that way and that it has never provided an employee with a permanent job task placement. Plaintiffs do not provide any evidence to the contrary, only that Ralcorp temporarily accommodated employees.

Sacerio also argues that Ralcorp rarely asks its employees to perform all job tasks within a job family; therefore, Ralcorp could have accommodated him by permanently placing him in a particular job task. To do so, however, would have still violated other employees' rights under the CBA. First, Sacerio would be taking positions within a job family from other employees who are more qualified to work in that particular job family. Second, in the event that Ralcorp

---

[5] *See* 1 BARBARA T. LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 914-16 (4th ed. 2007).

needed employees to perform different job tasks within a job family, Sacerio's inability to perform more than one job task could create more work for the other employees within the job family.

The Court concludes, therefore, that regardless of whether Sacerio is disabled, being able to work all job tasks within a job family is an essential job function, and that once his restrictions became permanent, there was no reasonable accommodation that would have made Sacerio "otherwise qualified."

B.

Alamer claims that Ralcorp discriminated against him on the basis of his disability from the time of his injury in July of 2007, until the time that he, by his own admittance, could no longer work in February of 2008.

The EEOC regulations guide our interpretation of the ADA. *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002). One of the ways the regulations define reasonable accommodation is "modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii) (2011). Assuming that temporarily limiting an employee to one job task is a benefit or privilege of employment, Ralcorp has an obligation to provide the benefit to disabled employees in the same way that it does to similarly situated non-disabled employees.[6]

Between July and November of 2007, there is no indication that Ralcorp treated Alamer differently than similarly situated non-disabled employees. Ralcorp placed Alamer in three

---

[6] Ralcorp readily admits in its pleadings that it has temporarily accommodated a number of its employees in the past by restricting them to one job task within a job family.

different job tasks within three different job families during that time period. Each time Alamer requested an alternative accommodation, Ralcorp granted his request within a reasonable period of time. Alamer argues that Ralcorp accommodated non-disabled coworker Damon Weathers, who had similar restrictions, by allowing him to remain in one light-duty job task over a period of several months. However, Ralcorp moved Alamer only because he kept requesting to be moved. Alamer has not established a failure to accommodate during this time.

Alamer claims that when he attempted to return to work on December 17, 2007, nearly a week after filing an OSHA charge, Ralcorp said that no jobs were available. Ralcorp does not address the fact that it failed to accommodate Alamer at all from December 17, 2007, until doctors placed him under permanent restrictions on February 19, 2008. Ralcorp has not identified a legitimate, non-discriminatory reason for failing to accommodate Alamer. In fact, when asked during his deposition whether trying to accommodate Alamer caused a disruption in production, supervisor Gibbs simply responded, "No."

The Court finds that genuine issues of material fact exist as to whether Ralcorp discriminated against Alamer on the basis of his disability from December 17, 2007 until February 19, 2008.

The Court will enter an order consistent with this Memorandum Opinion.